## STAMM v. EAGLE RICE & FEED MILL, Inc.
### No. 1264.

Court of Appeal of Louisiana. First Circuit.
Dec. 4, 1933.

Pugh & Buatt, of Crowley, for appellant.

Carmouche & Carmouche, of Crowley, for appellee.

MOUTON, Judge.

This suit is brought by plaintiff for damages to his auto, which, at the time of the injury, was being driven by his wife from Crowley to Rayne.

The damage resulted from a collision between his auto and a truck belonging to defendant company on the pavement of the highway between Rayne and Crowley. The collision occurred at 8:30 at night on a straight road at about 200 feet from a curve in the highway.

Mrs. Stamm was driving plaintiff's car and was going north with her sister, Mrs. Arceneaux, who was next to her on the front seat of the auto.

Simon, an employee of defendant company, was driving south on the highway, in a truck belonging to defendant, when the collision occurred; and Edwards, another employee, was driving in another truck in the rear, going in the same direction.

Mrs. Stamm testifies that her auto was in fine condition and that her lights were burning brightly; that she saw lights coming towards her (but which she did not then know if from an auto or truck) were approaching; that they were coming in the center of the road, and noticing this, she pulled to her right as far as she could and applied her brakes "to some extent." Her speed at that time, and when the accident happened, was about 20 miles an hour.

Her testimony in reference to the way in which the collision occurred is: That the head truck was suddenly turned to its right and that the trailer, which the evidence shows was bolted to it, swerved to the left, "right in front of her car," and ran into her auto. She stated, repeatedly, on cross-examination, that she was positive that her car was struck by the trailer and that she did not collide with the head truck Simon was driving.

Her sister, Mrs. Arceneaux, who was sitting next to Mrs. Stamm on the front seat of the auto, is equally positive that the trailer hooked to the Simon truck swerved to its left in front of plaintiff's car and ran into it; and that the collision was not with the front truck. She corroborates Mrs. Stamm in every essential particular of her testimony.

Mrs. Stamm was rigidly cross-examined by counsel for defendant in reference to a statement she made to a Mr. Clay, insurance agent. This alleged statement was made by Mrs. Stamm while yet in bed, which she could not read on account of the handwriting and which she signed at the request of Mr. Clay. There is no essential variance between her statement and the testimony given by her on the trial, and certainly not of a character to throw any discredit on her testimony, which is fully corroborated by the evidence of Mrs. Arceneaux, her sister.

Mrs. Stamm was knocked unconscious in the collision and her sister almost into hysterical spasms, who evidently received a cut in the face, as she testifies she could hardly see because of the "blood." She says, however, "I was not rendered unconscious." It is well established that plaintiff's auto, after its collision with the Simon truck, ran into the other truck, in the rear, Edwards was driving.

Both Mrs. Stamm and her sister say they did not see the collision with the truck that Edwards was driving behind the Simon truck, which was obviously due to their condition which resulted from the collision with the head truck. This is, however, entirely immaterial, as the solution of the case depends upon a correct determination of the issue as to whether defendant company was at fault when the truck, its employee Simon was driving, collided with plaintiff's auto.

Simon, driver of the first truck, testifies that he saw the auto coming towards him and noticed it was traveling in the center of the road; that he was driving on his right side of the highway with two of his right wheels on the pavement and the other two on the shoulder of the roadway near or in the ditch.

In the statement that part of his truck was off the pavement, he is corroborated by Edwards. He says he was going about 25 miles an hour when he saw the auto coming in the center of the road; that he applied his brakes, slowed down, but did not stop. His testimony is that Mrs. Stamm swerved to her left, ran into his truck, broke the left wheel, bent the fender and damaged the running board.

Edwards did not testify to these facts, as he was behind the Simon truck and could not see what was transpiring ahead of it, but corroborates Simon's statement that he was driving with two wheels on the pavement and the other two in or near the ditch on the west side of the highway.

We have therefore two eyewitnesses, Mrs. Stamm and Mrs. Arceneaux, who testify that

Simon turned to his right but that the trailer attached to his truck swerved to his left and ran into the plaintiff's car. Against that testimony, we have only the testimony of one eyewitness, Simon, who says the auto ran into his truck, causing the damages above stated.

There is certainly a direct conflict between these three witnesses on this the crucial point in the case, with two for plaintiff and one for defendant. Under the well-settled rules of law, plaintiff is entitled to recover on such an issue of fact where he has the majority of the witnesses on his side, particularly where the determination of the question involved depends largely on the credibility to be given to the testimony, which falls largely within the province of the trial judge.

In such a case, this defendant could expect a reversal only on the circumstances or physical facts of record which by their corroboration of the testimony offered by him would outweigh and overcome the testimony of plaintiff.

It is shown that after the collision the truck driven by Simon was in the ditch on the east side of the highway, that is, on the side opposite to the side where he claims he was driving at the time of the accident, with two wheels in the ditch. The Stamm car was also on the east side after the collision.

Brown, testifying for defendant company, says the truck was approximately 75 or 100 feet "south of the Stamm car" on the east side of the road.

The testimony of Simon is that when he saw the auto coming he was going about 25 miles an hour; that he noticed it was traveling in the center of the road, he slowed down, pulled to his right with his right wheels actually in the ditch or near it on the west side, when Mrs. Stamm veered to her left, ran into his truck, breaking his left wheel and damaging his running board and fender.

It is simply hard to believe that if he was driving at that slow speed and partly on the shoulder of the roadway, actually with the right wheels of his truck in or near the ditch and after being run into by plaintiff's auto in the manner related by him, that his truck would have darted across that highway 34 feet wide and would have run into the ditch on the opposite side, and not only that, but 75 or 100 feet south of plaintiff's auto which had stopped on the east side of the highway.

Defendant contends that the broken left wheel of the Simon truck, the impairment to the fender and running board, show that the auto ran into the truck. There can be no question that the truck in running across the highway on the east side, and 75 or 100 feet beyond the auto, southward, was no doubt moving under considerable force; and when it came to a stop where it was jammed against the side of the ditch, the impact could have broken the wheel and damaged the fender and running board. Simon does not deny that this impact could have broken the wheel of the truck, but says he could not say whether "it could or not."

The physical facts do not support the contentions of defendant, and are rather corroborative of the account of the accident given by plaintiff's witnesses, all of which shows that defendant company was at fault, and that it was correctly held liable for the damages to plaintiff's auto caused by the collision.

 Counsel for defendant contend that plaintiff has failed to prove the damages claimed by him amounting to $778.45, allowed below.

An itemized statement of the damages so claimed is annexed to plaintiff's petition.

Plaintiff testifies that this statement was prepared under his supervision, and that the repair of his auto, which cost him $1,500, would amount to that sum. He testifies he is selling automobiles and is engaged in the general garage business. No doubt, he was qualified to make this estimate, and we find no evidence contradicting its correctness. He said he was using the car and approximately the cost had amounted to $500, and this is the amount which defendant claims that plaintiff has established. But this answer of plaintiff must be taken in connection with his previous statement where he said he could not say how much the repairs on his auto would be, because they were "not completed yet."

He testified that his car's mileage at the time of the accident was 25,000 miles, but that its life mileage was 100,000; also, that he had been offered a secondhand car by the insurance company and that he could have bought a secondhand car for the cost it would take to repair his car.

Such facts cannot be taken as destructive of his right to recover the damages to his car which had cost him $1,500. On the contrary, they are confirmatory of his rights and entitle him to judgment against defendant company, as was decreed by the district judge.

An exception of no cause of action was filed in this court to which counsel for defendant make no reference in their brief.

We take it that they have abandoned the exception, and in which we fail to detect any merit.

Judgment affirmed.